IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>vs.<br><br>LYNN RAY BRACY,<br><br>      Defendant. | No. 97-cr-078-JEG<br><br>O R D E R |

The United States Probation Office Request for Modifying the Conditions of Supervision [Clerk's No. 45] came on for hearing on March 10, 2005, with a resistance having been filed and briefed by the Defendant.  The Government was represented by Assistant United States Attorney Cliff Wendel.  Defendant was represented by B. John Burns.  The Government obtained an extension of time in which to file a brief in support of the proposed modification.  That brief was filed on March 21, 2005.  The matter is now fully submitted for review.

### SUMMARY OF MATERIAL FACTS

Defendant Lynn Ray Bracy pled guilty to conspiracy to distribute methamphetamine on July 25, 1997.  On January 23, 1998, Defendant was sentenced to 50 months imprisonment and 60 months of supervised release.  Defendant's term of supervised release commenced on March 4, 2002.  On January 26, 2005, Deputy Chief United States Probation Officer Michael Elbert sent Defendant a certified letter directing him to appear on February 10, 2005, in order to submit a sample of his

blood for the purpose of gathering his DNA pursuant to the DNA Analysis Backlog Elimination Act. On February 7, Defendant contacted U.S. Probation Officer Jay Thompson and indicated he would not comply and submit to the DNA blood testing. Defendant stated that he could not trust the Government with his DNA. Defendant acknowledged that his failure to comply would be considered a new law violation and would place his current term of supervised release in jeopardy. Defendant was then referred to the Federal Public Defender's Office for counsel. Defendant did not appear for blood testing as directed on February 10.

On February 14, 2005, the Probation Office filed a Request for Modifying the Conditions or Terms of Supervision without Consent of Offender. The proposed modification states, "The defendant shall cooperate in the collection of DNA as directed by the Probation Officer."

On March 3, 2005, Defendant filed an objection to the proposed modification of his supervised release terms. Defendant states that the coerced collection of a sample of his blood for inclusion in the CODIS[1] database, maintained by the Federal Bureau of Investigation, would constitute an unreasonable search and seizure unsupported by probable cause or individualized suspicion. Defendant requests the Court

---

[1] Combined DNA Index System.

enter an order denying the request of the Probation Office for modification of conditions of his supervised release.

The Government has filed a brief in support of the requested modification. The Government asserts that Defendant has a substantially diminished expectation of privacy as a probationer, and that under a totality of circumstances test, DNA collection is constitutional. The Government also argues that the proposed DNA collection is constitutional under the special needs doctrine.

## APPLICABLE LAW AND DISCUSSION

"The probation office responsible for the supervision under Federal law of an individual on probation, parole, or supervised release shall collect a DNA sample from each such individual who is, or has been, convicted of a qualifying Federal offense". 42 U.S.C. § 14135(a)(2).  Defendant's conviction of conspiracy to distribute methamphetamine is a qualifying federal offense, see 42 U.S.C. § 14135(d)(1), thus Defendant is subject to the collection of DNA under the statute. An individual who is convicted of a qualifying federal offense who fails to cooperate in the collection of the DNA sample is guilty of a class A misdemeanor. 42 U.S.C. § 14135(a)(5)(A).

Defendant contends that the collection of his DNA for inclusion in the CODIS database would constitute an unreasonable search and seizure unsupported by probable cause or individualized suspicion. There is no dispute that the taking of

physical specimens such as blood or urine constitutes a search subject to the demands of the Fourth Amendment.  See Vernonia School Dist. 47J v. Acton, 515 U.S. 646, 652 (1995) (state-compelled collection and testing of urine constitutes a search); Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 616 (1989) (quoting Schmerber v. California, 384 U.S. 757, 767-768 (1966)) (quotations omitted) ("[C]ompelled intrusio[n] into the body for blood to be analyzed for alcohol content must be deemed a Fourth Amendment search."); United States v. Kincade, 379 F.3d 813, 821 n. 15 (9th Cir. 2004) ("The compulsory extraction of blood for DNA profiling unquestionably implicates the right to personal security embodied in the Fourth Amendment".)

  Two different approaches have been utilized by courts to address the constitutionality of the search and seizure of DNA from those convicted of qualifying federal offenses pursuant to the DNA Act.  The first approach employs a reasonableness standard and examines whether, based upon the totality of the circumstances, the search and seizure are reasonable given all of the circumstances surrounding the search and seizure and the nature of the search and seizure itself.  This approach involves balancing the degree to which the search intrudes upon an individual's expectation of privacy with the degree to which the search is needed for the promotion of legitimate governmental interests.  United States v. Knights, 534

U.S. 112, 119 (2001). The majority of courts have applied this reasonableness standard. See United States v. Sczubelek, — F.3d —, 2005 WL 638158 (3d Cir. March 21, 2005) ("[I]t is appropriate to examine the reasonableness of the taking of the [blood] sample under the more rigorous Knights totality of the circumstances test rather than the Griffin special needs exception."); Kincade, 379 F.3d at 839 ("compulsory DNA profiling of qualified federal offenders is reasonable under the totality of the circumstances"); Groceman v. U.S. Dept. of Justice, 354 F.3d 411, 413 (5th Cir. 2004) (finding DNA Act reasonable based on the totality of the circumstances); Jones v. Murray, 962 F.2d 302, 307 (4th Cir. 1992) (applying reasonableness standard and upholding the Virginia DNA collection statute).

The second approach applies the special needs exception to the warrant and probable cause requirements of the Fourth Amendment. This approach examines whether special needs exist sufficient to justify searches and seizures conducted for important non-law enforcement purposes in situations where complying with the warrant and probable cause requirements would be unfeasible. The minority of courts, while similarly upholding the constitutionality of the DNA Act, have utilized this special needs exception to the warrant requirement in so holding. See Green v. Berge, 354 F.3d 675, 679 (7th Cir. 2004) (finding Wisconsin DNA statute withstands constitutional attack under the special needs doctrine); Roe v. Marcotte, 193 F.3d 72, 79 (2nd Cir. 1999) (concluding that a reasoned interpretation of the special needs

doctrine supported the constitutionality of Connecticut's DNA statute).[2]  While recognizing the "special needs" analysis may also provide an appropriate legal basis upon which to resolve the issue, this Court joins the majority of the courts in finding the reasonableness standard is the appropriate analysis to undertake in examining the constitutionality of the DNA Act in this case.

"The touchstone of the Fourth Amendment is reasonableness." Florida v. Jimeno, 500 U.S. 248, 250 (1991) (citing Katz v. United States, 389 U.S. 347, 360 (1967)).  "Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." Ohio v. Robinette, 519 U.S. 33, 39 (1996).  "[T]he reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." Knights, 534 U.S. at 118 (quoting Wyoming v. Houghton, 526 U.S. 295, 300 (1999)) (quotations omitted).

Addressing the degree to which collection of Defendant's blood sample would intrude upon Defendant's privacy, the Court first recognizes that as a convicted felon

---

[2] The Tenth Circuit has utilized both the reasonableness standard and the special needs doctrine in addressing this issue.  Compare United States v. Kimler, 335 F.3d 1132, 1146 (10th Cir. 2003) ("The DNA Act, while implicating the Fourth Amendment, is a reasonable search and seizure under the special needs exception to the Fourth Amendment's warrant requirement because the desire to build a DNA database goes beyond the ordinary law enforcement need.") with Boling v. Romer, 101 F.3d 1336, 1340 (1997) (applying reasonableness standard in upholding Colorado's DNA statute).

on supervised release, Defendant has a diminished expectation of privacy. Griffin v. Wisconsin, 483 U.S. 868, 874 (1987) ("To a greater or lesser degree, it is always true of probationers . . . that they do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions.' "); Sczubelek, — F.3d —, 2005 WL 638158, *8 ("[F]or criminal offenders the privacy interests implicated by the collection of DNA are minimal."); Knights, 534 U.S. at 119 ("[A] court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens.").

    Defendant has no legitimate expectation of privacy in proof of his identity as a convicted offender. See Sczubelek, — F. 3d — ("Individuals on supervised release cannot reasonably expect to keep information bearing on their physical identity from government records."); Padgett v. Donald, — F.3d —, 2005 WL 503312 (11th Cir. March 4, 2005) (prisoners have a reduced expectation of privacy in their identities); Groceman, 354 F.3d at 413-14 ("Though, like fingerprinting, collection of a DNA sample for purposes of identification implicates the Fourth Amendment, persons incarcerated after conviction retain no constitutional privacy interest against their correct identification."); Kincade, 379 F.3d at 837 ("[T]he DNA profile derived from the defendant's blood sample establishes only a record of the defendant's identity – otherwise personal information in which the qualified offender can claim no right of privacy once lawfully convicted of a qualifying offense".); Jones, 962 F.2d at 306

("[W]hen a suspect is arrested upon probable cause, his identification becomes a matter of legitimate state interest and he can hardly claim privacy in it.").

In addition, the intrusion of extracting the blood sample is minimal. Schmerber, 384 U.S. at 771 (blood tests are "commonplace in these days of periodic physical examination and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain."); Winston v. Lee, 470 U.S. 753, 762 (1985) ("blood tests do not constitute an unduly extensive imposition on an individual's personal privacy and bodily integrity"); Sczubelek, — F. 3d — ("[T]he intrusion of a blood test is minimal."); Kincade, 379 F.3d at 836 (same). It is this minimal intrusion and diminished expectation of privacy that the Court must weigh against the governmental interests at stake.

The Government sets forth two important government interests which are served by the collection of DNA from persons who are convicted of qualifying offenses under the statute. First, the DNA collection combats recidivism by solving crimes and removing dangerous offenders from the street. Second, DNA collection reduces the incidence of injustice in the criminal justice system because true perpetrators of crimes can be identified through DNA matching, thus exonerating any other person who might have been wrongfully suspected, accused, or convicted of the crime. The Court finds these interests to be compelling.

The Court also notes that the DNA Act is narrowly tailored. The probation officer has no discretion in deciding from whom to collect a sample, and the Act specifies that the DNA analyses may only be disclosed

> to criminal justice agencies for law enforcement identification purposes . . . in judicial proceedings, if otherwise admissible pursuant to applicable statutes or rules . . . for criminal defense purposes, to a defendant, who shall have access to samples and analyses performed in connection with the case in which such defendant is charged . . . [and] if personally identifiable information is removed, for a population statistics database, for identification research and protocol development purposes, or for quality control purposes.

42 U.S.C. § 14132(b)(3). A failure to comply with these privacy requirements can result in denial of access to CODIS. 42 U.S.C. § 14132(c).

The Court concludes that upon balancing Defendant's reduced expectation of privacy, his prior general demonstration of criminal tendency, the huge benefit to society in comparison to the small inconvenience to Defendant, and the essential reasonableness of the proposed DNA collection, the collection of DNA from Defendant does not run afoul of the protections of the Fourth Amendment.

## CONCLUSION

The Court finds that the collection of DNA from Defendant, as a qualifying offender on supervised release, in the absence of individualized suspicion or probable cause to believe a current offense is being committed, is constitutional under the totality of the circumstances. The Court orders that Defendant's conditions of supervised release be modified as follows:

**The Defendant, Lynn Ray Bracy, shall cooperate in the collection of DNA as directed by the Probation Officer.**

**IT IS SO ORDERED.**

Dated this 14th day of April, 2005.

*/s/ James E. Gritzner*
JAMES E. GRITZNER, JUDGE
UNITED STATES DISTRICT COURT